UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:

                                  Case No. 98-85361-478

      MARIO C. RODRIGUEZ,

                                  Chapter 7

             Debtor.
----------------------------------------------------------x


MEMORANDUM DECISION


*Appearances:*

Pryor & Mandelup, L.L.P.
Counsel to Chapter 7 Trustee
By: A. Scott Mandelup, Esq.
675 Old Country Road
Westbury, N.Y. 11590

United States Department of Justice, Tax Division
for United States of America
By: Bartholomew Cirenza, Esq.
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044

The Debtor filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code on May 29, 1998 (the "Petition Date").  The case was converted to a Chapter 7 case on December 30, 1998 and the Chapter 7 Trustee (the "Trustee") was appointed.  The United States of America, Internal Revenue Service (the "IRS") timely filed a proof of claim on March 26, 1999, in the amount of $363,496.84 consisting of a priority claim in the amount of $277,919.54 for federal income taxes and interest owed for the 1996 tax year and a general unsecured claim for penalties in the amount of $85,577.25 ("Claim No. 11").

Before the Court are issues relating to the Trustee's motion for summary judgment which seeks to disallow Claim No. 11 and requests for a refund of federal income taxes paid for the 1995 and 1996 tax years (the "Summary Judgment Motion") and the IRS's cross motion to dismiss claiming, *inter alia,* that the Court lacks jurisdiction over the refund claims pursuant to 26 U.S.C. § 6511 (the "Cross Motion to Dismiss").

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334.  This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O) and 11 U.S.C. §§ 502(b) and 505(a).

The following constitutes the Court's findings of fact and conclusions of law as mandated by Bankruptcy Rule 7052 of the Federal Rules of Bankruptcy Procedure.


**FACTS**

During 1992, the Debtor was employed by an investment banking firm, known as J. Gregory & Co., Inc. ("J. Gregory").  In 1993 and 1994, the Debtor received $312,458 and $350,841, respectively, in income from J. Gregory which consisted mainly of commissions he

earned as a stockbroker. J. Gregory changed its name in 1994 or 1995 to Sterling Foster & Company, Inc. ("Sterling Foster"). Adam Lieberman ("Adam") was the president and nominal shareholder of Sterling Foster. Because Sterling Foster was a sub-chapter S corporation for federal income tax purposes, the taxable income of Sterling Foster would have been reportable on Adam's federal income tax return.

In 1995, the Debtor became a branch manager for Sterling Foster with supervisory responsibilities and the Debtor reported directly to Adam. In the beginning of 1995, Adam told the Debtor that he was going to provide the Debtor with additional income above the Debtor's customary commissions and bonuses through Sterling Foster and that the Debtor should deposit the additional funds into an account. As directed by Adam, the Debtor formed a corporate entity named Chestnut Enterprises, Inc. ("Chestnut") of which he was the president and sole shareholder and opened two accounts at Chase Manhattan Bank ("Chase"). One of the Chase bank accounts, account no. XXX-X-XX8267, was in the Debtor's name (the "Rodriguez Chase Account") and the other Chase bank account, account no. XXX-X-XX1667, was in the name of Chestnut (the "Chestnut Chase Account"). Adam also instructed the Debtor to use the same accountant that prepared his personal and Sterling Foster's tax returns to prepare the Debtor's income tax returns. Adam had Sterling Foster give additional funds to the Debtor with the hope that Debtor would write checks if and when Adam requested. The Debtor gave Adam the impression that if asked, he would write those checks using those monies he received and deposited into these Chase accounts.

Most of the funds in the Chase accounts came from Sterling Foster and Adam. In 1995, the Debtor deposited approximately $2,020,000 from Sterling Foster and $2,116,000 from Adam

into the Rodriguez Chase Account.  In 1996, the Debtor received more than $6,750,000 from Sterling Foster and deposited approximately $5,556,291 of these funds into the Rodriguez Chase Account and $1,250,000 of these funds into the Chestnut Chase Account.  The Debtor would often transfer funds from the Rodriguez Chase Account to the Chestnut Chase Account and then transfer the funds back to the Rodriguez Chase Account when he needed to write a check in his name.  Most of the checks the Debtor issued with respect to the additional funds he received from Sterling Foster and Adam came from the Rodriguez Chase Account.

The Debtor issued checks from the Chase Accounts to various individuals at Adam's request during his employment at Sterling Foster.  On two occasions, Adam asked the Debtor to issue checks to his brother, David Lieberman ("David").  The Debtor had no relationship to David.  On December 4, 1995, the Debtor received more than $2 million from Adam which the Debtor deposited into the Rodriguez Chase Account.  In response to Adam's first request, the Debtor transferred to David $1,500,000 from the Rodriguez Chase Account by check no. 302, dated December 18, 1995.  On February 28, 2006, the Debtor received more than $2,750,000 from Sterling Foster which he deposited into the Rodriguez Chase Account. In response to Adam's second request, the Debtor transferred $2,650,000 to David by check no. 314, dated March 11, 1996.  Both transfers to David totaled $4,150,000.  In each instance, there was no significant activity in the Chase accounts between the time the funds were deposited into the Rodriguez Chase Account and when the Debtor issued a check to David.  David testified that he does not recall receiving checks from the Debtor or why the Debtor would give him funds even though upon a review of the checks he acknowledged that he must have endorsed the checks. While Adam testified that he had a vague recollection that he asked the Debtor to issue checks to

David to help his brother start up a business, the Court finds this testimony to be unreliable as to the purpose behind the transfer.

In addition to issuing checks to various individuals at Adam's request, the Debtor used the funds in the Rodriguez Chase Account that he received from Sterling Foster to pay the federal and state taxes on his earned income and on the funds Adam had transferred to him from Sterling Foster for the 1995 and 1996 tax years. The Debtor also issued checks from the two Chase accounts to himself, his tailor and others to satisfy his own financial obligations and to his mother for her benefit.

For the 1995 tax year, the Debtor received a 1995 IRS Form W-2 showing $2,180,036 in earned income. The Debtor filed his 1995 federal income tax return on October 17, 1996 and reported $888,020 in federal income taxes owed. The Debtor made payments toward the federal income tax liability throughout 1996 with the last payment made on December 30, 1996.

Based upon the 1996 Form W-2 the Debtor received from Sterling Foster showing earned income of $6,671,254, the Debtor filed his 1996 federal income tax return on September 9, 1998 and reported $2,448,050 in federal income taxes owed. Of this tax liability, the Debtor had paid a total $2.2 million by April 15, 1997 through employer withholding and a payment of estimated taxes when he filed a request for an extension of time to file his 1996 tax return. Since then, the IRS has been applying payments received from the Debtor and any overpayment of federal income taxes (i.e., tax refunds) for subsequent tax years to reduce the balance owing on the 1996 federal income tax return as follows:

| Date Applied | Amount | Source |
| --- | --- | --- |
| February 8, 1999 | $1,897.00 | overpaid credit for the 1997 tax year |
| June 21, 1999 | $1,037.00 | overpaid credit for the 1998 tax year |
| April 15, 2001 | $ 827.00 | overpaid credit for the 2000 tax year |

4

| | | |
|---|---|---|
| September 3, 2001 | $   165.70 | overpaid credit for the 2000 tax year |
| April 15, 2004 | $3,863.00 | overpaid credit for the 2003 tax year |
| May 20, 2004 | $1,266.00 | payment |
| April 15, 2004 | $    31.00 | overpaid credit for 2004 tax year |
| June 19, 2006 | $    82.00 | payment |

IRS's Claim No. 11 seeks the balance of the unpaid federal income tax liability for the 1996 tax year.

Sterling Foster ceased operations in 1997. The United States had brought charges against Adam, the Debtor and other individuals for securities law violations. Adam entered a guilty plea agreement on August 20, 1997 in a criminal action brought against him. The plea agreement required Adam to transfer to the United States Marshal Services ("U.S. Marshal Services") various assets he had, including "[a]ny and all funds transferred by [him] to his brothers, David Lieberman and Andrew Lieberman during the time period from approximately January 1, 1994 to the date of this agreement, including, but not limited to, $5,000,000 presently held by David Lieberman and Andrew Lieberman."

David transferred $4,750,000 by check no. 368, dated February 1, 1998, from his Chase Bank account to Adam. Adam deposited the $4,750,000 he received from David and $250,000 he received from his brother Andrew into an account at Fidelity Investments. On February 7, 1998, Adam transferred $5 million from his Fidelity Investments account to the U.S. Marshal Services as part of the $14.5 million in restitution payments he was ordered to pay that eventually went to a victims' compensation fund established to compensate former customers of Sterling Foster. Adam claimed a deduction for the restitution payments on his amended 1997 federal income tax return and carried the unused portion of the deduction back 3 years. As a result, Adam received a significant reduction in federal income tax.

At a hearing held on March 4, 1998 by the United States District Court for the Southern District of New York in Adam's criminal action at which the court accepted Adam's guilty plea, Adam testified that "from in or about 1996 through in or about 1997, I transferred approximately $13 million from Sterling Foster to various Sterling Foster employees whom I felt would hold this money for my benefit."  This testimony was consistent with the Debtor's testimony regarding the source and flow of funds in the Chase accounts.

During the course of the Chapter 7 proceeding, the Trustee commenced an adversary proceeding in this Court against the United States of America, David Lieberman and Adam Lieberman seeking to avoid the Debtor's transfers of $1,500,000 and $2,650,000 in 1995 and 1996, respectively, to David as fraudulent conveyances and to recover the value of the transfers from the defendants as transferees (the "Fraudulent Conveyance Action").

In the Preliminary Pre-Conference Statement, dated June 21, 2000 that the United States served on the Trustee (but never filed with the Court) (the "Preliminary Pre-Conference Statement"), the United States asserts that:

> [t]he government does not dispute the allegation that Mario Rodriguez was the recipient of funds belonging to Sterling Foster that were transferred by or at the direction of David L. Liebermann and/or Adam Liebermann, for the purpose of further transfer back to David L. Liebermann and/or Adam Liebermann. Additionally, the government does not dispute the allegation that Adam Liebermann transferred the funds at issue to the United States Marshal Services for the Southern District of New York.

Preliminary Pre-Conference Statement, at 4.  The IRS does not dispute the assertions made by the United States in the Preliminary Pre-Conference Statement.

During the pendency of the Fraudulent Conveyance Action, the Trustee objected to the IRS's proof of claim on September 20, 2002 (the "Initial Claims Objection").   The Trustee

6

alleged that because the United States took the position in the Fraudulent Conveyance Action that the transferred funds were not property of the Debtor's bankruptcy estate, the Debtor should not be subject to tax on those funds.  Accordingly, the Trustee averred that the Debtor had no outstanding tax liability to the IRS for the 1996 tax year and in fact the Debtor was entitled to a refund.  The United States filed its First Claims Objection Response, dated December 2, 2002 (signed by counsel appearing on behalf of the IRS) in which the government advised the Court that the funds in question in the Fraudulent Conveyance Action were "transferred to the United States Marshal for distribution to claimants", i.e., the Sterling Foster customers who were beneficiaries of the victims' compensation fund.  In addition, the government argued that the fact that income reported on the Debtor's IRS Form W-2 and 1996 federal income tax return was the subject of a criminal transaction and subject to forfeiture to the U.S. Marshal Services for distribution to claimants in connection with certain criminal restitution judgments did not alter the fact that the Debtor was liable for federal income taxes on those funds.  After a hearing on the Trustee's Initial Claims Objection, the Court found that the Trustee failed to present evidence rebutting the prima facie validity of Claim No. 11 for unpaid taxes.  Accordingly, the Court denied the Trustee's Initial Claims Objection without prejudice to his right to renew his objection to Claim No. 11.

The Fraudulent Conveyance Action was subsequently settled against the Liebermans and after conducting a further investigation, the Trustee determined that it was not in the best interest of the bankruptcy estate to challenge the government's position that the transferred funds did not constitute property of the Debtor's bankruptcy estate.  Accordingly, on July 18, 2005, the Trustee filed a motion to dismiss the Fraudulent Conveyance Action against the United States

without prejudice and sought to preserve his right to object to Claim No. 11 and to assert any refund claim against the government with respect to the transferred funds. The Court entered an Order of dismissal of the Fraudulent Conveyance Action on August 20, 2005.

On December 9, 2005, the Trustee renewed his objection to Claim No. 11 and requested a refund of all federal income taxes, interest and penalties previously paid on approximately $6.6 million the Debtor received from Sterling Foster in 1996 (the "Renewed Claims Objection"). The IRS filed its opposition to the Trustee's Renewed Claims Objection on January 25, 2006 arguing that the Trustee again failed to rebut the prima facie validity of Claim No. 11 and that the Trustee's refund claim is time barred as set forth under 26 U.S.C. § 6511. At a hearing held on January 26, 2006, the parties and the Court agreed that the proceedings relating to the Renewed Claims Objection, including the Trustee's refund claims, would be deemed an adversary proceeding.

After the completion of discovery, the Trustee filed the Summary Judgment Motion, dated October 24, 2007. The Trustee alleges that the Debtor returned $1,500,000 in 1995 and $2,650,000 in 1996 to Adam by way of checks to David who later transferred the funds back to Adam in 1998. The Trustee argues that the transferred funds either (1) constituted restitution payments on the part of the Debtor because the funds were ultimately transferred to the U.S. Marshal Services which entitles the Debtor to a restitution deduction for the 1995 and 1996 tax years, or (2) should not have been included in the Debtor's taxable income because the Debtor was merely a conduit who received the funds for Adam and then promptly transferred the funds to David as Adam directed. Under either scenario, the Trustee argues the Debtor overpaid his 1995 and 1996 federal income taxes as a result of the transferred funds being included in his

8

taxable income.    Accordingly, the Trustee submits that Claim No. 11 should be expunged and the bankruptcy estate should receive tax refunds for the 1995 and 1996 tax years.

On December 5, 2007, the IRS filed its Cross Motion to Dismiss and response to the Trustee's Summary Judgment Motion.  The Trustee filed his reply and opposition to the Cross Motion to Dismiss on December 21, 2007, and a Supplemental Affidavit on January 2, 2008. The Trustee's arguments and the IRS's defense of statute of limitations were raised for the first time pursuant to the Trustee's Renewed Claims Objection and Summary Judgment Motion. The Court held a hearing on the Summary Judgment Motion and the Cross Motion to Dismiss on January 3, 2008.  The parties were permitted to file supplemental papers after the hearing in support of their respective motions.

## DISCUSSION

I.    <u>Objection to Claim Not Procedurally Defective</u>.

Under Bankruptcy Rule 3001(f), a proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure shall constitute prima facie evidence of the validity and amount of the claim.  Pursuant to 11 U.S.C. § 502(a), a proof of claim is deemed allowed unless a party in interest objects.

If an objection to a claim is made, 11 U.S.C. § 502(b) provides that the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent certain limitations specified in the Bankruptcy Code, which are not applicable in this case, apply.

If an objection to a claim is joined with a demand for relief of the kind specified in Bankruptcy Rule 7001, such as a demand to recover money under Bankruptcy Rule 7001(1), it becomes an adversary proceeding. Fed. R. Bankr. P. 3007. When a claims objection becomes an adversary proceeding pursuant to Bankruptcy Rule 3007, the Court "may direct, in complicated matters, that the trustee comply with the procedural requirements of Part VII of the Federal Rules of Bankruptcy Procedure, '[i]ncluding requiring the objecting party to institute an adversary proceeding by filing a complaint.'" *In re Danbury Square Associates, Limited Partnership*, 153 B.R. 657, 661 (Bankr. S.D.N.Y. 1993)(internal citations omitted). Indeed, the Court previously deemed the proceedings relating to the Renewed Claims Objection, including the Trustee's refund claims, to be an adversary proceeding at the January 26, 2006 hearing. The parties have complied with the procedural requirements of Part VII of the Bankruptcy Rules. There has not been any complicated issue so far that warranted the formal commencement of a separate adversary proceeding. Accordingly, a separate adversary proceeding is not necessary and the Trustee's requests for tax refunds as part of his renewed objection to Claim No. 11 is not procedurally defective.


II.    <u>Summary Judgment Motion</u>.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7056, the Court may award summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

When no genuine triable issues of material fact exist, the moving party is entitled to judgment as a matter of law and summary judgment should be granted.  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11-12 (2d Cir. 1986).  The mere production of some evidence in support of the opposing party's position will not justify denial of a summary judgment motion, unless the court finds that there is evidence upon which a jury can properly proceed to find a verdict for the party opposing the motion.  *American v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Instead, the opposing party must "set forth specific facts showing that there is a genuine issue for trial."  *Williams v. Smith*, 781 F.2d 318, 323 (2d Cir. 1986). A court must always "resolve ambiguities and draw reasonable inferences against the moving party."  *King v. United States Fire Ins. Co.*, 804 F.2d at 11.  However, the opposing party may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Id.,* 804 F.2d at 12.

With respect to tax claims and tax refund claims, 11 U.S.C. § 505 sets forth the following parameters of the Court's subject matter jurisdiction to determine such claims:

**11 U.S.C. § 505.       Determination of tax liability**
(a)(1)   Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal or competent jurisdiction.
  (2)   The court may not so determine —
      (A)      the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title;
      (B)      any right of the estate to a tax refund, before the earlier of —
          (i)       120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or
          (ii)      a determination by such governmental unit of such request….

11

A.    *IRS's Proof of Claim.*

As an initial matter, the Court must determine whether there is any amount due with respect to Claim No. 11 before it can determine whether the bankruptcy estate can obtain a refund with respect to the 1996 tax year.  While there is no proof of claim filed with respect to the 1995 tax year, the Court will also discuss the Debtor's liability with respect to the 1995 tax year as the Debtor's tax liability arose from the same arrangement the Debtor had with Adam in order to determine whether there is any basis for the Trustee's refund claims.

With respect to the Trustee's objection to the allowance of Claim No. 11, it is undisputed that 11 U.S.C. §§ 502(b) and 505(a)(2)(B) grant the bankruptcy court subject matter jurisdiction to adjudicate unpaid taxes.  As set forth above, 11 U.S.C. § 505(a)(2)(A) limits the bankruptcy court's ability to determine the amount or legality of a tax, fine, penalty, or addition to tax only if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal before the commencement of this case.  *See also, Cumberland Farms, Inc. v. Town of Barnstable (In re Cumberland Farms, Inc.)*, 175 B.R. 138, 143 (Bankr. D. Mass. 1994).  Because the amount or legality of the Debtor's 1995 and 1996 federal income taxes has not been contested previously before and adjudicated by a judicial or administrative tribunal before the Petition Date, the limitation under 11 U.S.C. § 505(a)(2)(A) is not applicable.  Accordingly, the Court has subject matter jurisdiction concerning the validity and amount of unpaid taxes for the 1996 tax year asserted by the IRS in Claim No 11.

At issue is whether the IRS has a valid claim for $248,050 of unpaid taxes plus interest and penalties for a total claim of $363,496.84 for the 1996 tax year when the Debtor allegedly transferred $2,650,000 of the monies he received from Sterling Foster to David in 1996 on

12

Adam's instruction.

Under 26 U.S.C. § 61(a), "gross income" means all income from whatever source derived…."  Courts have liberally interpreted "gross income" to include all 'accessions to wealth, clearly realized, and over which the taxpayers have complete dominion.' *Commissioner of Internal Revenue v. Glenshaw Glass Co.*, 348 U.S. 426, 431, 75 S.Ct. 473, 477, 99 L.Ed. 483 (1955).  "A gain 'constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it.'" *James v. Commissioner*, 366 U.S. 213, 218, 81 S.Ct. 1052, 6 L.Ed.2d 146 (1961)(quoting *Rutkin v. United States*, 343 U.S. 130, 137, 72 S.Ct. 571, 575, 96 L.Ed. 833 (1952)).

> When a taxpayer acquires earnings, <u>lawfully or unlawfully</u>, ***without the consensual recognition***, express or implied, ***of an obligation to repay and without restriction as to their disposition***, 'he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent.'  In such a case, the taxpayer has 'actual command over the property taxed-the actual benefit for which the tax is paid'.

*Id.*, 366 U.S. at 219-220 (citing *North American Oil Consolidated v. Burnet*, 286 U.S.417, 424, 52 S.Ct. 613, 76 L.Ed. 1197 (1932)(emphasis added).  While income that is unlawfully obtained generally constitutes taxable gross income to the recipient, there must also be a lack of any obligation to repay the income or lack of restrictions as to the disposition of such income, and the taxpayer must have command over such income.

Therefore, the "legal test for taxable income is dominion and control, and that test in its terms excludes consideration of what happens to income after it flows from the taxpayer's hands." *Wood v. United States*, 863 F.2d 417, 419 (5th Cir. 1989).  *See also*, *Carione v. United States*, 368 F. Supp. 2d 186, 192 (E.D.N.Y. 2005).  "In determining whether a taxpayer enjoys

'complete dominion' over a given sum, the crucial point is not whether his use of the funds is unconstrained during some interim period. The key is whether the taxpayer has some guarantee that he will be allowed to keep the money." *Commissioner of Internal Revenue v. Indianapolis Power & Light Co.*, 493 U.S. 203, 210, 110 S.Ct. 589, 593, 107 L.Ed.2d 591 (1990). *See also Corliss v. Bowers*, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916 (1930)(finding that taxing is not so much concerned with title as it is with actual command over property taxed-the actual benefit for which the tax is paid).

The "mere fact that funds are deposited in a bank account does not establish that the deposits are taxable income....[A]mounts a taxpayer receives as a mere conduit or agent for transmittal to another are not taxable to him." *Apothaker v. Commissioner*, T.C. Memo 1985-445. Courts have generally held in cases where a taxpayer returned a portion of the monies he received in a form of a kickback that the taxpayer acted as a conduit and the kickbacks paid should not be included in the taxpayer's gross income. A taxpayer need not treat monies received as income where the taxpayer did not receive the monies under a claim of right, "which were not his to keep and which he was required to transmit to someone else as a mere conduit." *Han v. Commissioner*, T.C. Memo 2002-148 (quoting *Diamond v. Commissioner*, 56 T.C. 530, 541, 1971 WL 2461 (1971), *aff'd*, 492 F.2d 286 (7th Cir. 1974)). *See also United States v. Hawryluk*, 658 F. Supp. 112, 115 (E.D. Pa. 1987). There is no claim of right on the part of the taxpayer to funds if a taxpayer makes prompt payments of amounts received even if the payments are made in the absence of an enforceable obligation. *Jones v. Commissioner*, T.C. Memo. 1984-257; *Shaara v. Commissioner*, T.C. Memo. 1980-247; *Lashells' Estate v. Commissioner*, 208 F.2d 430, 435 (6th Cir. 1953).

14

In this case, the Court finds that the $4,150,000 the Debtor transferred to David did not constitute gross income with respect to the Debtor because the Debtor acted as a conduit with respect to those funds.  In 1995 and 1996, the Debtor received significant amounts of money from Sterling Foster at Adam's direction in excess of what he previously received as salary, commissions and bonuses for essentially the same services performed in previous years. Although the Debtor used some of the funds deposited into the Chase accounts to satisfy his own personal obligations or for the benefit of his mother, there was no assurance that the Debtor was allowed to keep all the funds for his own economic benefit.  Most of the Sterling Foster funds in the Chase accounts belonged to Adam and the Debtor was restricted in his use of these funds.  It was the Debtor's and Adam's understanding that the Debtor would receive funds from Sterling Foster and write checks distributing funds in the Chase accounts to persons and in amounts directed by Adam from time to time and the Debtor did write checks as directed even though there was no enforceable obligation between him and Adam.  In particular, the Debtor received more than $2 million from Adam on December 4, 1995 which he deposited into the Rodriguez Chase Account and the next significant activity on that account was the $1,500,000 check made payable to David at Adam's direction on December 18, 1995.  In addition, the Debtor received $2,756,291.23 from Sterling Foster which he deposited into the Rodriguez Chase Account on February 28, 1996 and the next significant activity on that account was the $2,650,000 check the Debtor issued to David on March 11, 1996.  The Debtor did not realize any economic benefit with respect to the funds he transferred to David because he was directed to transfer those funds shortly after he received them.  Unlike the taxpayer in *James v United States,* the Debtor was a conduit and not the beneficiary of the entire $4,150,00 he transferred to David and the Debtor

never asserted dominion and control with respect to these funds.

The IRS argues that the funds the Debtor received from Sterling Foster, including the $4,150,000 transferred to David, constitute income in the form of salary, commissions and bonuses and that the Debtor was required to pay taxes on such income. The Court finds it reasonable that the payment of income taxes on the amounts the Debtor actually received for his own use from Sterling Foster with the funds in the Chase accounts was taxable to him. However, the funds transferred to Adam or David belonged to Adam.

While the IRS attempts to create uncertainty regarding whether the transferred funds were actually used by Adam to pay the victims' compensation fund, the Court finds the issues raised by the IRS to be mere speculation without any evidentiary support. Indeed, the government admitted in the Preliminary Pre-Conference Statement and in the Response to the Initial Claims Objection, dated December 2, 2002, that it does not dispute the allegation that the Debtor was the recipient of *funds belonging to Sterling Foster* that were transferred by or at the direction of David and/or Adam Lieberman *for the purpose of further transfer* back to David and/or Adam Lieberman and that the funds at issue were transferred to the U.S. Marshal Services (emphasis added). Moreover, a trial on the issue of tracing of the funds would unlikely produce any testimony that would be different from what the parties obtained through their exhaustive depositions and discovery. Accordingly, there is no material issue of fact regarding the flow of funds from Adam to the Debtor through Sterling Foster and from the Debtor to David and back to Adam and then to the U.S. Marshals Services.

The Trustee argues in the alternative that because the transferred funds eventually went to a victims' compensation fund as restitution, the Debtor should be entitled to a restitution

16

deduction which would offset the amount in the IRS's proof of claim.  Because the Court finds that the Debtor acted as a conduit, the transferred funds do not constitute restitution with respect to the Debtor.

Implicit in the allowance of a deduction for a payment of restitution is that the deduction may only be taken by the person who actually made the restitution payment.  *See James v. United States,* 366 U.S. at 219-220, 81 S.Ct. 1052, 6 L.Ed.2d 146 (1961).  While the Trustee urges the Court to look beyond Adam, the immediate payor of the restitution payments, to the Debtor as the "source" of the funds for the restitution to find that the Debtor is entitled to a restitution deduction, the Court finds otherwise.  Adam (through Sterling Foster) was the ultimate source of the funds for the restitution payments.  While the funds the Debtor transferred to David have been used by Adam to pay restitution for which Adam requested and received restitution tax benefits, these funds did not constitute the Debtor's restitution payment as he was merely an intermediary.  To allow the Debtor a restitution deduction with respect to these funds would give the Debtor a tax benefit for his position as a conduit.  It was Adam who made the restitution payments from funds received from the Debtor and who received the tax benefit therefrom.  In addition, the Debtor was also ordered in a criminal action against him pursuant to a judgment, dated October 31, 2002, to make restitution to the same victims' compensation fund as Adam.  The Debtor's obligation to make restitution payment to the victims compensation fund was separate from that of Adam.  Based upon the foregoing, the Debtor is not entitled to claim a restitution deduction for the funds transferred to David.

Accordingly, with respect to the outstanding tax liability for the 1996 tax year, because the Debtor was a conduit for the $2,650,000 he transferred to David, the $2,650,000 should not

be included in the Debtor's gross income.  The Debtor should not be subject to federal income tax on such amount.  When the Debtor's 1996 gross income is reduced by the $2,650,000 given to David, the Debtor overpaid his federal income taxes by $630,384.  Accordingly, the Debtor does not have an outstanding tax liability to the IRS for the 1996 tax year and Claim No. 11 is disallowed.

The Court notes that while most of the funds in the Chase accounts belonged to Adam, to the extent the Debtor (a) retained some of those funds for his own personal use and benefit and to benefit his mother and (b) never returned them to Adam, the Debtor actually asserted dominion and control over those funds and realized the economic benefit of those funds. Accordingly, the Debtor was required to include those funds in his gross income which he did do.  The Court will not and need not consider whether the Debtor was obligated to repay Adam for the monies that he used for his own benefit as the issue of taxation of these monies is not before the Court.

B.    *Trustee's refund claims.*

As a defense and counterclaim to IRS's proof of claim, the Trustee has asserted refund claims against the IRS for overpayment of 1995 and 1996 federal income taxes.  Although the Court has determined that the Debtor has no outstanding liability to the IRS with respect to the 1996 tax year, the Court can only determine the bankruptcy estate's entitlement to a refund claim if the Court has jurisdiction over the refund claim under 11 U.S.C. § 505(a)(2)(B) and 26 U.S.C. § 6511(a).

As discussed above, 11 U.S.C. § 505(a)(2)(B) provides that the Court may not determine

18

any right of the estate to a tax refund, before 120 days after the trustee "properly" requests such refund from the governmental unit from which such refund is claimed.  Under 26 U.S.C. § 7422(a):

> [n]o suit or proceeding shall be maintained in any court for the recovery of an internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

The IRS asserts that the Court does not have jurisdiction to consider the Trustee's refund claims because neither the Debtor nor the Trustee filed an amended tax return with the IRS requesting a refund of overpaid 1995 and 1996 federal income taxes.  However, where refunds are sought as an offset or counterclaim to a proof of claim filed by the IRS or other taxing authority, an amended tax return need not be filed first with the taxing authority.  *In re Dunhill Medical, Inc.*, No. 92-37700, 1996 WL 354696 at *5 (Bankr. D.N.J. March 27, 1996) (citing 124 Cong. Rec. H11110-11 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong. Rec. S17426-28 (daily ed. October 6, 1978) (statement of Sen. DeConcini).  *See also, In re Custom Distribution Services Inc.*, 224 F.3d 235, 244 (3d Cir. 2000); *United States v. Kearns*, 177 F.3d 706, 711 (8th Cir. 1999) (citing *Michaud v. United States*, 206 B.R. 1, 5 (D.N.H. 1997)). Accordingly, the Trustee's refund requests with respect to the 1995 and 1996 tax years contained in his Initial Claims Objection and Renewed Claims Objection to Claim No. 11 constitute proper informal requests for a refund.  The Court finds that the Trustee has properly made a refund request and such request need not be filed with the IRS first where the refund is sought as an offset or counterclaim to a proof of claim filed by the IRS.

19

1.    So is the Trustee's refund claim time barred?

While a refund claim raised as an offset or counterclaim to a proof of claim is sufficient to constitute a request, the courts in various circuits have differed on whether the debtor or the trustee needs to make its request for a refund or offset within the prescribed statutory period set forth in 26 U.S.C. § 6511.  This issue is now before this Court.

 In requesting a refund of federal income taxes from the IRS, 26 U.S.C. § 6511(a) provides that a "[c]laim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid…."  No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in 26 U.S.C. § 6511(a), unless a claim for credit or refund is filed by the taxpayer within such period.  26 U.S.C. § 6511(b)(1).

If a refund claim was filed within the applicable time limitations, the amount of the refund a taxpayer may receive is limited under 26 U.S.C. § 6511(b)(2) as follows:

(A)    Limit where claim filed within 3-year period.--If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return….

(B)    Limit where claim not filed within 3-year period.--If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.

(C)    Limit if no claim filed.--If no claim was filed, the credit or refund shall not exceed the amount which would be allowable under subparagraph (A) or (B), as the case may be, if claim was filed on the date the credit or refund

20

is allowed.

Only the Court of Appeals for the Third, Fifth and Eight Circuits have considered the statute of limitations under 26 U.S.C. § 6511 in the context of a refund claim arising as an offset or counterclaim to a proof of claim in a bankruptcy case.  The Fifth Circuit in *In re Armstrong* ruled that the chapter 7 trustee was barred from recovering on his refund claim where he failed to file his refund claim within the period set forth in 26 U.S.C. § 6511 and failed to raise the issue with the bankruptcy court before the IRS's proof of claim was denied.  206 F.3d 465, 472 (5th Cir. 2000). The Third Circuit also held that a court must comply with the statutory period requirements in determining whether a refund arising as an offset or counterclaim to a claim of unpaid taxes is available.  *In re Custom Distribution Services Inc.*, 224 F.2d at 244 (citing *Dunhill Medical, Inc.*, 1996 WL 354696 at *6).  *See also In re Pransky*, 318 F.3d 536, 544 (3d Cir. 2003); *In re Cumberland Farms, Inc.*, 175 B.R. 138 (Bankr. D. Mass. 1994); *In re Sims*, No. 90-12280-B, 1991 WL 253017 at *3, 91-2 USTC ¶ 50,510 (Bankr. E.D.La. August 28, 1991). Accordingly, these courts have held that a trustee or debtor generally needs to comply with the statutory requirements of 26 U.S.C. § 6511 in seeking a refund as an offset to a claim filed by a taxing authority.

The Eighth Circuit took a contrary view in *United States v. Kearns*, 177 F.3d 706 (8th Cir. 1999), where the debtor sought to offset the IRS's claim for unpaid tax liability for the 1989 tax year arising from unreported embezzlement income with deductions he claimed to be entitled to as a result of restitution payments made to the victims in subsequent years.  In addressing whether the bankruptcy court had subject matter jurisdiction under 11 U.S.C. § 505, the Eighth Circuit found "§ 505 to confer on bankruptcy courts jurisdiction to determine tax liability beyond

the year stated in the proof of claim when that liability involves deductions resulting from repayment of embezzled funds" (i.e. a deduction arising from a restitution payment).  177 F.3d at 710.  On the issue of the debtor's failure to seek an offset within the statue of limitations, the Eighth Circuit acknowledges that "[b]ecause the statute of limitations is a jurisdictional requirement in suits against the United States, the defense may be raised at any time in the litigation.  *See Miller v. Tony & Susan Alamo Found.*, 134 F.3d 910,916 (8th Cir. 1998).  However, if, when the claims of the IRS and a debtor involve the same tax liabilities, it is 'without purpose and irrational' to deny jurisdiction over refunds absent a formal request by the debtor,  *Michaud*, 206 B.R. at 5, it would be doubly so to apply a statutory bar to the debtor's claim for determination of tax liability." 177 F.3d at 710-711.  Ultimately, the Eight Circuit determined that the taxpayer should be entitled to a deduction for restitution payments made for his embezzlement of funds to the extent he would also be subject to an income tax liability relating to the funds he embezzled.

While the Trustee urges the Court to follow *Kearns* and hold that statute of limitations are inapplicable when a refund claim is raised as a counterclaim to a proof of claim filed by a governmental entity*,* the Court notes that unique facts and circumstances were present in *Kearns.*  While the Debtor in this case also engaged in unlawful activities that resulted in his receipt of funds from Adam, this case is distinguishable from *Kearns*.  First, the debtor in *Kearns* received the economic benefit of the funds he embezzled whereas the Debtor in this case never received the economic benefit of the $4,150,000 that was transferred to him from Sterling Foster which he then transferred to David because Adam exerted dominion and control over these particular funds.  Second, as the Court has already found that the transferred funds did not constitute

restitution on the part of the Debtor, *Kearns* is inapplicable. Absent a similar set of circumstances in *Kearns*, the Court is reluctant to apply the Eight Circuit's ruling to this case.

There is no decision by the Court of Appeals for the Second Circuit, the relevant authority in this district, on whether 26 U.S.C. § 6511 is applicable to a refund claim made under 11 U.S.C. § 505. While the IRS has argued that *Kishani v. United States*, No. CV-91-3953 (CPS), 1993 WL 41777 (E.D.N.Y. February 12, 1993) stands for the proposition that the timeliness requirement under 26 U.S.C. § 6511 is jurisdictional, *Kishani* was not a bankruptcy case so it did not deal with jurisdictional limits in the context of a refund or offset of tax liability being asserted as a counterclaim to a proof of claim. However, the Bankruptcy Court for the Northern District of New York in *In re Hudson*, 345 B.R. 477, 482 (Bankr. N.D.NY. 2006), did find 26 U.S.C. § 6511 to be applicable to a claim for a refund or credit of overpaid taxes sought as an offset to the IRS's proof of claim. In that case, the court held that the debtor was not entitled to any refund credit arising from the overpayment of taxes when the taxes were deemed paid more than 3 years before the refund claims were filed. Accordingly, in light of the Third and Fifth Circuits decisions and *In re Hudson*, this Court finds that the statute of limitations under 26 U.S.C. § 6511 is jurisdictional with respect to any untimely refund claim asserted as a counterclaim to an IRS proof of claim.

The Trustee asserts that his delay in asserting a refund claim was due to his inability to get the criminal records from Adam's criminal action to piece together the flow of funds because those records were under seal and the United States refused to turn over any document to the Trustee until after the United States made a motion to dismiss the Fraudulent Conveyance Action.

23

Because the Court finds that the limitations period set forth in 26 U.S.C. § 6511 is jurisdictional, the Court cannot toll the statutory period for a refund claim on equitable grounds. *United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997). Congress did not intend that a general "equitable tolling" doctrine apply to the time limitations set forth under 26 U.S.C. § 6511.

> Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended, "equitable" exceptions into the statute that it wrote. There are no counterindications. Tax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities.

*Id.*, 519 U.S. at 352-353. Indeed, in response to *United States v. Brockamp*, Congress amended 26 U.S.C. § 6511 to contain a limited tolling provision when an individual taxpayer is prevented by a medically determinable physical or mental impairment from timely seeking a refund but Congress's decision not to specify any general tolling provision further justifies the Supreme Court's reading of the statute in *Brockamp*. 26 U.S.C. § 6511(h); *Doe 1 and Doe 2 v. KPMG, LLP*, 398 F.3d 686, 689 (5th Cir. 2005). Some statutes of limitations, such as 26 U.S.C. § 6511, seek not so much to protect a taxpayer's case-specific interest in timeliness as to achieve a broader system-related goal, such as facilitating the administration of claims. *See John R. Sand & Gravel Co. v United States*, — U.S. —, 128 S.Ct. 750, 753, — L.Ed.2d — (2008) (citing *United States v. Brockamp*). Accordingly, the statute of limitations for filing a refund claim cannot be tolled on equitable grounds.

While some courts have considered whether the government should be equitably estopped from raising the statute of limitation, the taxpayer would need to demonstrate that the government made some misrepresentation or engaged in some affirmative misconduct that

24

would lull the taxpayer into inaction. *Miller v. United States*, 500 F.2d 1007, 1010 (2d Cir. 1974); *Howard Bank v. United States*, 759 F. Supp. 1073 (D. Vt. 1991). *See also Pavlik v. Internal Revenue Service*, No. 01-CV-708 H(POR), 2001 WL 1388336 at *3 (S.D. Cal. 2001); *Porter v. Internal Revenue Service*, No. 4-98-CV-20374, 1999 WL 1090822 at *4-5 (S.D. Iowa 1999); *Video Training Source, Inc. v. United States*, 991 F. Supp. 1256, 1263 (D. Colo. 1998). Delay by the government in furnishing a taxpayer the information needed to file a refund claim generally does not rise to the level of affirmative misconduct, *Minehan v. United States*, 75 Fed. Cl. 249, 258, n. 11 (Fed. Cl. 2007), nor does it justify the equitable tolling of the statute of limitations, *Wadlington v. United States*, 68 Fed. Cl. 145 (Fed. Cl. 2005), *aff'd*, 176 F.App'x. 105 (Fed. Cir. 2006); *McElwee v. United States*, No. 96-2137, 1997 WL 701330, 97-2 USTC ¶ 50,642 (C.D. Ill. 1997).

In this case, there is no evidence that the government made any misrepresentation or engaged in any affirmative misconduct that would lull the Trustee into thinking that the government had agreed to an extension of the statute of limitations for filing a refund claim nor has the Trustee made any such assertion. While the Trustee's allegations of deliberate withholding of information by the government are troubling if true, the Court does not have any evidence that such delay in the turnover of the requested information to be detrimental to the Trustee's ability to assert a refund claim on a timely basis. The Trustee was aware of the transfer of the $4,150,000 from the Debtor to David and to Adam and then to the U.S. Marshal Services. This was raised in the Trustee's Complaint in the Fraudulent Conveyance Action. The Trustee was first given notice of the United States's position that the funds transferred by the Debtor to David were not property of the bankruptcy estate when the United States filed its

25

Answer in the Fraudulent Conveyance Action on June 21, 2000, which was within the limitations period of 26 U.S.C. § 6511. While it is uncertain what other documents the Trustee would have needed from Adam's criminal action to piece together the flow of funds, the Trustee could have taken steps to protect its right to timely assert a refund claim, such as filing a protective claim, but he did not do so. Given the circumstances of this case and the strict statutory limitations of 26 U.S.C. § 6511, this Court does not have any authority to extend the statute of limitations on the basis of equitable estoppel.

Moreover, while the IRS has invested resources in investigating and responding to the Trustee's objections to Claim No. 11 for the last several years and did not file its Cross Motion to Dismiss until December 5, 2007, the IRS cannot waive the statute of limitations because the time limit in such statute is jurisdictional despite arguments by the Trustee to the contrary. *See John R. Sand & Gravel Co. v United States*, 128 S.Ct. at 753 (citing to *United States v. Brockamp,* the Supreme Court stated that "[t]he Court has often read the time limits of these statutes as more absolute, say as requiring a court to decide a timeliness question despite a waiver, or as forbidding a court to consider whether certain equitable considerations warrant extending a limitations period"). Accordingly, doctrines of equitable tolling, equitable estoppel and waiver are inapplicable to this case.

Therefore, the Court has jurisdiction over the Trustee's refund claims only to the extent such claims were timely asserted pursuant to 26 U.S.C. § 6511.

        a.      1995 Tax Year.

With respect to the Trustee's refund claim for an overpayment of 1995 federal income

taxes, the Court does not have jurisdiction over the Trustee's refund claim for this year.  Under 26 U.S.C. § 6511(a), the Trustee would need to have asserted a refund claim no later than the later of 3 years from the filing of the tax return or 2 years from when the taxes were paid.  Because the Debtor filed his 1995 tax return on October 18, 1996 and satisfied his tax liability in full upon the filing of his tax return, the 3-year period from when the tax return is filed would provide a longer limitations period than the 2-year period from when the tax was paid.  As a result, the latest the Trustee could assert a timely refund claim was October 18, 1999.  Because the Trustee did not assert any refund claim for the 1995 tax year by October 18, 1999, the Trustee's refund claim is untimely pursuant to 26 U.S.C. § 6511 and must be denied.  Despite assertions by the Trustee to the contrary, the bankruptcy estate is not penalized from the denial of the refund claim for the 1995 tax year because the Debtor paid for most of his tax liability for this tax year with the funds he received from Sterling Foster and deposited into the two Chase accounts and which he was holding for Adam's benefit.

### b.    1996 Tax Year.

With respect to the 1996 tax year, the Trustee would need to have asserted a refund claim by the later of 3 years from the filing of the tax return or 2 years from when the taxes were paid. 26 U.S.C. § 6511(a).  The Debtor filed his federal income tax return for the 1996 tax year on September 9, 1998 but had paid $2.2 million of his tax liability by April 15, 1997.  The 3-year period from when the tax return was filed ended on September 9, 2001 and the 2 year period from which the $2.2 million was paid ended on April 15, 1999.  Accordingly, in order to obtain a refund of a portion of the $2.2 million in taxes paid, the Trustee would have needed to assert an

informal refund claim by September 9, 2001.   As the IRS set forth in its arguments, the earliest

the Trustee could be deemed to have made a refund claim was September 20, 2002 when the

Trustee asserted an entitlement to a refund in his Initial Claims Objection to Claim No. 11 and

any recovery by the bankruptcy estate would be limited to amounts paid from September 20,

2000 to September 20, 2002 under the 2-year limitation of § 6511(b)(2)(B).   Accordingly, the

refund claim with respect to the $2.2 million paid is outside of the relevant statutory period and

the Court does not have jurisdiction to grant the Trustee' refund claim with respect to any

portion of the $2.2 million.   Moreover, as discussed above, the bankruptcy estate is not

prejudiced by its inability to recover a portion of the taxes by April 15, 1997 because these taxes

were paid mainly with funds the Debtor was holding in the Chase accounts for Adam's benefit

and not with the Debtor's own funds.

However, the IRS continued to apply payments made by the Debtor and tax refunds due

to the Debtor for subsequent tax years against the tax liability shown on the Debtor's 1996 tax

return.  With each payment, Section 6511(a) provides for a 2-year period for a refund claim to be

made with respect to such payment.   The Trustee brought his Initial Claims Objection on

September 20, 2002.   Although the Court previously denied the Initial Claims Objection, the

Court's denial was without prejudice to the Trustee's right to renew his objection.  For the

reasons discussed above, the Court finds that the request for a refund in the Trustee's Initial

Claims Objection was warranted.  During that 2-year period from September 20, 2000 to

September 20, 2002, the IRS  applied a total of $922.70 in tax refunds from the 2000 tax year

against the 1996 tax liability.  Because the Initial Claims Objection was filed within the

applicable time limits for the $922.70, the Court has jurisdiction under 26 U.S.C. § 6511 over the

refund claim with respect to this amount. Accordingly, the bankruptcy estate is entitled to a refund of the $922.70 with interest payable from the date of overpayment as set forth in 26 U.S.C. § 6611.

The Court's analysis, however, does not end there. Because the Trustee also has a proper informal refund claim currently outstanding with respect to his Renewed Claims Objection filed on December 9, 2005, the Trustee would also be entitled to a refund to the extent payments were made within the 2-year period preceding such refund claim (i.e., December 9, 2003 to December 9, 2005). The Debtor is deemed to have made payment on his 1996 tax liability on (1) April 15, 2004 in the amount of $3,863 that was credited from the Debtor's 2003 tax return, (2) May 20, 2004 in the amount of $1,266 from a payment made by the Debtor, and (3) April 15, 2005 in the amount of $31 that was credited from the Debtor's 2004 tax return. In total, the Debtor has made payments of $5,160 toward his 1996 tax liability during this 2-year period. Accordingly, under 26 U.S.C. § 6511(b)(2)(B), the Court has jurisdiction with respect the Trustee's informal refund claim made in connection with the Renewed Claims Objection and the bankruptcy estate is entitled to a refund of the $5,160 with interest payable from the date of overpayment as set forth in 26 U.S.C. § 6611.

While the IRS asserts that the Trustee does not have standing to assert a refund claim if the funds the Debtor transferred to David did not constitute taxable gross income with respect to the Debtor, the Court notes that it was the Debtor's own funds and tax refund credits for subsequent tax years that went towards the paying down of the 1996 tax liability after the tax return was filed and not funds of Sterling Foster and/or Adam Lieberman that were deposited into the Chase accounts. The refund that the Trustee is entitled to is a refund of the Debtor's own funds and tax refund credits. The Court need not decide on the issue of standing with

respect to a refund of any portion of the $2.2 million that was paid when the Debtor's 1996 tax return was filed because the Court does not have jurisdiction over those amounts. Based upon the foregoing, the bankruptcy estate is entitled to a total refund of $6,082.70 with respect to the 1996 tax year with interest payable from the date of overpayment as set forth in 26 U.S.C. §6611.[1]

## CONCLUSION

Based upon the foregoing, the IRS's Cross Motion to Dismiss is denied. The Trustee's Summary Judgment Motion is granted with respect to the disallowance of Claim No. 11. The Trustee's refund request for overpayment of federal income taxes for the 1995 tax year is denied and the refund request for overpayment of federal income taxes for the 1996 tax year is granted in the amount of $6,082.70 with interest payable from the date of the overpayment as set forth in 26 U.S.C. § 6611.

Dated: Central Islip, New York
     April 22, 2008

                                  *s/ Dorothy Eisenberg*
                                  Dorothy Eisenberg
                                  United States Bankruptcy Judge

---

[1] With respect to any further refund claim, the Trustee would only be entitled to recover any other payment that the Debtor has made or the IRS applied towards the 1996 tax liability (i.e., $82 paid on June 19, 2006) to the extent the Trustee timely makes a refund claim before the 2 year statute of limitations period expires.